**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Jonathan Perfetto

        v.                                    Case No. 20-cv-527-JL-AJ

Garrett Graves, M.D. et al.

**REPORT AND RECOMMENDATION**

Self-represented Plaintiff Jonathan Perfetto, a New Hampshire Department of Corrections ("NHDOC") prisoner now housed in the Montana Department of Corrections ("MDOC"), brought claims under 42 U.S.C. § 1983 asserting that the mental health treatment he received at the Northern New Hampshire Correctional Facility ("NCF") was inadequate, in violation of his Eighth Amendment right not to be subject to cruel and unusual punishment.  The claim remaining in this case is Mr. Perfetto's Eighth Amendment claim against NCF psychiatrist, Dr. Garrett Graves.  Dr. Graves filed a motion (Doc. No. 64) for summary judgment asserting that Mr. Perfetto did not administratively exhaust his claim as required by the Prison Litigation Reform Act ("PLRA").  That motion is referred to the undersigned magistrate judge for consideration and a Report and Recommendation ("R&R") as to disposition.  See 28 U.S.C. § 636(b)(1)(B); LR 72.1.  Mr. Perfetto filed an objection (Doc. No. 66) to that motion.  As explained below, the district judge should deny Dr. Graves's motion for summary judgment.

**Standard of Review**

In a civil case in federal court, a jury (or a judge in the case of a bench trial)

decides the facts and resolves factual disputes in the evidence, while judges decide questions of law.  When the facts which concern a particular claim in a lawsuit are not in dispute, a party can file a motion for summary judgment asking the court to decide whether, based on the undisputed facts of the case, the law is on their side.  See Fed. R. Civ. P. 56.

If a party files a motion for summary judgment, that party must first show "that there is no genuine dispute as to any material fact," and that the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute is one where the evidence is such that a reasonable jury could resolve the point in the favor of the non-moving party, and a material fact is . . . a fact that has the potential of affecting the outcome of the case."  Hamdallah v. CPC Carolina PR, LLC, 91 F.4th 1, 16 (1st Cir. 2024) (internal quotation marks and citation omitted).  While the moving party has the initial burden, the nonmoving party, in response to a motion for summary judgment "must present specific facts showing that a trier of fact could reasonably find in [their] favor" and "must be careful not to rely on conclusory allegations, improbable inferences, and unsupported speculation."  Id. (internal quotation marks and citation omitted).

## Background

The court authorized the following claim to proceed against Dr. Graves in this case:

> Dr. Graves failed to reschedule Mr. Perfetto's November 2016 medication review appointment, which was cancelled when Mr. Perfetto was transferred from the [New Hampshire State Prison ("NHSP")] to NCF, until February 2017, and failed to renew Mr. Perfetto's anxiety medication prior

> to the February 2017 appointment, although Dr. Graves was aware of Mr. Perfetto's serious mental health issues, his need for medication to treat those issues, and that Mr. Perfetto's mental illnesses, and their symptoms, were worsening.

Feb. 14, 2023 Order (Doc. No. 13, at 3).

In his Complaint,[1] Mr. Perfetto asserted the following facts in support of that claim.  On September 28, 2026, Mr. Perfetto saw Nurse Practitioner Cathy Fontaine at the NHSP for a review of his mental health medications.  Doc. No. 1, at 51.  Mr. Perfetto's next medication review appointment was scheduled for November 16, 2016 with Nurse Fontaine.  Id.  Two weeks later, Mr. Perfetto was hired in the NHSP sign shop and, as a result, had to cancel his November 16 appointment.  Id.  Nurse Fontaine scheduled a new appointment for Mr. Peretto to occur on November 18, 2016.  Id.  Mr. Perfetto was unable to attend that appointment because he was transferred to NCF before that date.  Id.

On November 22, 2016, Mr. Perfetto went to mental health sick call at NCF to schedule an appointment with Dr. Graves to get his Vistaril prescription renewed, as he was experiencing increased anxiety symptoms.  Id.  At mental health sick call, Mr. Perfetto was instructed to send Dr. Graves an Inmate Request Slip ("IRS") to schedule an appointment.  Id.  On November 22, 2016, Mr. Perfetto wrote an IRS to Dr. Graves explaining his symptoms and asking to be seen.  See Nov. 22, 2016 IRS (Doc. No. 64-9, at 4); see also Doc. No. 1, at 51-52.  When Dr. Graves did not respond to that IRS, Mr. Perfetto sent him a second IRS on December 8, 2016, seeking assistance with his

---

[1] Mr. Perfetto's Complaint is sworn, and is therefore of sufficient evidentiary quality for the court to consider at summary judgment.  See Doc. No. 1, at 4.

medication and an appointment.  See Doc. No. 64-9, at 5; see also Doc. No. 1, at 52.  In

his Complaint, Mr. Perfetto states that the December 8, 2016 IRS said:

> Ms. Fontaine prescribed Visteral for stress related rash brake outs [sic] on
> 10/10/16.  The new computer system has no record of this.  I wrote an
> Inmate Request Slip to NHSP/M's ARNP Cathy Fontaine (sp?) thinking it
> was Benadryl (sp?) that she prescribed on October 10, 2016.  She
> corrected him but did not prescribe.  I will write her again; but can you
> please e-mail her to get this problem resolved?  BTW when I see you, can
> we discuss a med to help me concentrate?

Doc. No. 1, at 52.  On December 14, 2016, Dr. Graves sent a response to Mr. Perfetto

stating: "Appt is mid Feb.  I know [you] have stopped using Vistaril.  See you soon."

Doc. No. 64-9, at 5; Doc. No. 1, at 52-53.

On January 5, 2017, Mr. Perfetto sent an IRS to NHDOC Medical and Forensic

Services ("MFS") Deputy Director Heidi Guinen.  Defendant attached a copy of that IRS

to his motion for summary judgment which, to the extent it is legible, appears to be of

the same nature as the November and December requests sent to Dr. Graves.  See

Doc. No. 64-9, at 6.  On January 12, 2017, Dr. Graves responded to that IRS and said

'You are scheduled soon!  Don't worry.  Take care." Id.  On January 6, 2017, Mr.

Perfetto sent a third IRS to Dr. Graves asking for assistance with his mental health

symptoms and medication.  See Doc. No. 64-9, at 7; Doc. No. 1, at 53.  According to

the Complaint, that IRS stated:

> I spoke to Correctional Officer Putney at 0312 hours during a round and
> explained to him my meds are all screwed-up and my therapist is not in
> today, that I'm not suicidal but very frustrated and asked if medical sick
> call with me.  He suggested I go and will give medical a heads-up.  None
> of my meds are working sans my Buspar.  Correctional Officer Putney can
> verify for at least [unreadable] 2 weeks – maybe 3.  I sleep 3-4 hours.  I
> am very irritable and get dizzy [unreadable] throughout the day.  My
> Trazadone takes 3-4 hours to kick in.  My Lamictal dose has its purpose –

4

have not had an increase since you directed/suggested the proper dosage
to Doctor Brown.  Please, pretty please help me.[2]

Doc. No. 1, at 53.  Dr. Graves responded on January 12, 2017, stating "Appt mid

February.  See you then.  Take care."  Doc. No. 64-9, at 7; see also Doc. No. 1, at 54.

Mr. Perfetto saw Dr. Graves on February 15, 2017, for his "quarterly" medication

review.  Doc. No. 1, at 54.  Mr. Perfetto told Dr. Graves his medication was not working

and asked Dr. Graves to increase his Topamax and Lamictal.  Doc. No. 2, at 29-30.  Dr.

Graves instead raised the dose of Mr. Perfetto's Buspar, Mr. Perfetto's anxiety

medication.  Doc. No. 1, at 55.

On March 6, 2017, Mr. Perfetto sent a Level I grievance to MFS Director Paula

Mattis.  Doc. No. 64-9, which, it appears, was accompanied by copies of the four IRSs

described above which Mr. Perfetto sent to Dr. Graves or Deputy Director Guinen

between November 22, 2016 and January 6, 2017.[3]  In his March 6, 2017 grievance,

Mr. Perfetto reviewed the IRSs he sent to Deputy Director Guinen and Dr. Graves and

the responses he received to those IRSs.  In that grievance, Mr. Perfetto also explained

that he had seen Dr. Graves on February 15, 2017, but was dissatisfied with the lack of

care he received in the five months prior to that appointment.  On March 16, 2017,

---

[2] In the Complaint, Mr. Perfetto indicates that when he stated "My Lamictal dose
has its purpose," he meant that he wanted an increased dosage due to having built a
tolerance to his then-current dose.  Doc. No. 1, at 53.

[3] The defendant submitted, as "Exhibit 5" to his motion for summary judgment, a
6-page document he identified as "March 2017 Grievance Form."  Doc. Nos. 64-3, 64-9.
Exhibit 5 includes, in addition to the Level I Grievance to MFS Director Mattis, copies of
Mr. Perfetto's four related IRSs, and the responses to all of those documents.  The court
presumes, therefore, that the March 2017 Level I Grievance to MFS Director Mattis was
comprised of all seven pages.

Director Mattis responded: "Dear Mr. Perfetto: Please see #9 on back.  You are recommended to write an IRS to Ms. Heidi Guinen.  Respectfully, Paula Mattis."  Number 9 on the back of the grievance form states that prisoners must use an IRS to try to resolve issues prior to filing a grievance.  It is not clear on what date Mr. Perfetto received Director Mattis's response.

On April 12, 2017, Mr. Perfetto sent a Level II grievance form to NHDOC Commissioner Chris Kench.[4]  Doc. No. 64-10.  Again, Mr. Perfetto explained that he wished to grieve the lack of mental health care he received for the five months prior to his February 15, 2017 appointment with Dr. Graves.  In that grievance, he explained that he did not follow Director Mattis's recommendation to send an IRS to Deputy Director Guinen, as he had already done that and the IRS he sent to her was redirected to Dr. Graves.  Mr. Perfetto stated, however, that he would send another such IRS as necessary.  It appears that all of Mr. Perfetto's IRSs and his Level I grievance, and the responses to those complaints, were filed with the Level II grievance.  Id.  On April 19, 2017, Commissioner Kench responded to Mr. Perfetto, stating "I have been informed that you are currently in the infirmary and your needs are being met," thus denying Mr. Perfetto's Level II grievance on its merits.  Doc. No. 64-10, at 2.  In that response, Commissioner Kench did not mention any procedural defect in the Level II grievance or

---

[4] The defendant submitted, as "Exhibit 6" to his motion for summary judgment, a fourteen-page document he identified as "March 2017 Grievance Form."  Doc. Nos. 64-3, 64-10.  Exhibit 6 includes, in addition to the Level II grievance form to Commissioner Kench, copies of the Level I Grievance to MFS Director Mattis, Mr. Perfetto's four related IRSs, and the responses to all of those documents.  The court presumes, therefore, that the March 2017 Level II Grievance to Commissioner Kench was comprised of all fourteen pages.

6

Mr. Perfetto's other exhaustion efforts.  Id.

## Discussion

Dr. Graves moves for summary judgment on the ground that Mr. Perfetto did not satisfy the PLRA's exhaustion requirement.  The exhaustion provision of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  If a prisoner fails to exhaust his available administrative remedies before filing suit, any unexhausted claims must be dismissed.  See Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

The PLRA "'requires proper exhaustion' of available grievance procedures, meaning a prisoner 'must complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to bringing suit in federal court.'"  Perttu v. Richards, 605 U.S. 460, 465 (2025) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).  "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules' – rules that are defined not by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88).  Accordingly, "[p]roper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules."  Woodford, 548 U.S. at 90-91 (footnote omitted).

7

Exhaustion may be excused if the administrative procedure is unavailable to the prisoner.  See Ross v. Blake, 578 U.S. 632, 643-44 (2016) (describing circumstances that might render an administrative grievance process unavailable).  A claim that a prisoner failed to exhaust administrative remedies "is an affirmative defense under the PLRA[.]"  Jones, 549 U.S. at 216.  To prevail on his motion for summary judgment, the defendant "must show that no factfinder could reasonably conclude that plaintiff exhausted available remedies before filing suit."  Burns v. Croteau, 561 F. Supp. 3d 164, 168 (D.N.H. 2020).

The NHDOC has a three-step administrative procedure for inmates to "request a formal review of any issue related to any aspect of his or her confinement."  N.H. Code Admin. R. Cor 313.01.  That procedure operates as follows:

> The first step in the process requires the prisoner to submit a formal complaint in the form of an electronic request or an IRS to "the highest-level authority within a housing unit, or work area[.]" Cor 313.04(a) and (d). The electronic request or IRS must be submitted within 30 days after the incident giving rise to the prisoner's complaint and must contain enough information to enable a prison staff member to perform an investigation. Cor 313.04(f)-(g). As a general matter, an appropriate prison staff member must complete the investigation and respond to the formal complaint, in writing, within fifteen working days after it is received. See Cor 313.04(h)-(i) and (k)-(n). However, if the prisoner can demonstrate that the use of this procedure would likely result in "a substantial risk of personal injury," or other serious harm, the prisoner is entitled to skip this step in the grievance process and proceed directly to the second step in the process. Cor 313.04(j).
>
> If the prisoner is dissatisfied with the response to a formal complaint, he may elevate the complaint by filing a "Level I Grievance" with the appropriate warden, director, or administrator, as specified in the regulations. See Cor 313.04(n), 313.05(d). Ordinarily, Level I Grievances must be filed within fifteen days of the date of the response to the formal complaint. See Cor 313.05(c). Additionally, they must "be limited to one subject per grievance" and must contain enough information to allow for

8

> investigation. Cor 313.05(e) and (k). Unless the prisoner has obtained a waiver from the requirement to submit a formal complaint, he must demonstrate that the first step in the grievance process has been completed. See Cor 313.05(b). The warden, director or administrator must conduct any investigation and respond to the prisoner's grievance, in writing, within thirty days after receiving a Grievance Form. Cor 313.05(l), (p)-(q) and (s). A prisoner may skip this step in the process if the prisoner can demonstrate that using it would likely result in "identifiable risk or harm to his or her physical safety or psychological well-being." Cor 313.05(n).
>
> A prisoner who is dissatisfied with the response at the second step in the grievance process may proceed to the final step in the three-step process by filing a "Level II Grievance." See Cor 313.05(s), 313.06. At this step, the prisoner must submit a Level II Grievance to the DOC Commissioner's Office within fifteen days following the date of the response to the Level I Grievance. See Cor 313.06(c) and (e). Unless the prisoner has been excused from the requirement to submit a Level I Grievance, he must demonstrate that the Level I Grievance process has been utilized and exhausted. See Cor 313.06(b). As in the case of Level I Grievances, Level II Grievances must "be limited to one subject per grievance" and must contain sufficient detail to allow for investigation. See Cor 313.06(d) and (k). The Commissioner's Office has thirty days following its receipt of the Grievance to conduct any investigation and respond to the prisoner's complaint in writing. See Cor 313.06(l)-(o). In contrast to the earlier steps of the grievance process, there is no exception that allows the prisoner to skip or avoid this step. See generally Cor 313.06. Therefore, to fully exhaust administrative remedies with respect to a particular complaint, a prisoner in DOC custody must obtain a decision from the Commissioner of Corrections.

Casanova v. Ramos, Civil No. 21-cv-851-PB, 2024 U.S. Dist. LEXIS 30545, at *10-*11, 2024 WL 712585, at *4 (D.N.H. Jan. 31, 2024) (citation omitted), R&R approved, 2024 U.S. Dist. LEXIS 29116, at *1, 2024 WL 710111, at *1 (D.N.H. Feb. 20, 2024).

Dr. Graves contends that although Mr. Perfetto filed IRSs, he failed to timely file a Level I grievance to Director Mattis, and failed to timely file a Level II Grievance to the

Commissioner after receiving responses to those IRSs.[5] Dr. Graves correctly states that Mr. Perfetto's Level I grievance appeal was filed more than fifteen days after Dr. Graves responded, on January 12, 2017, to Mr. Perfetto's January 5 and 6, 2017 IRSs, and that the NHDOC administrative grievance procedures require such an appeal to be filed within fifteen days of the response. Dr. Graves asserts here that because the appeal was untimely, it was procedurally defective, and therefore does not satisfy the PLRA exhaustion requirement. Director Mattis did not deny the grievance on the basis that it was untimely, but recommended that Mr. Perfetto send an IRS to Deputy Director Guinen. It is not clear whether Director Mattis understood Mr. Perfetto had already attempted to send Deputy Director Guinen an IRS, or whether she was recommending that he send a second IRS to her.

Defendant further notes that Mr. Perfetto's April 2017 Level II grievance was also filed more than fifteen days after Director Mattis wrote her response to the Level I grievance. When he responded to the Level II grievance, Commissioner Kench denied Mr. Perfetto's grievance substantively, on the basis that it appeared that Mr. Perfetto's

---

[5] Alternatively, Dr. Graves argues that the March 2017 Level I Grievance sent to Director Mattis was a first complaint about not receiving mental health treatment which was not preceded by the IRS required by the NHDOC's grievance system, rendering Mr. Perfetto's Level I and Level II grievances insufficient to exhaust Mr. Perfetto's administrative remedies as required by the PLRA. The March 6, 2017 Level I grievance Mr. Perfetto sent to Director Mattis discussed the IRSs he sent, complained about the same issue, and apparently attached those IRSs to the Level I grievance form, and followed a similar process in filing his Level II grievance. Construed in the light most favorable to Mr. Perfetto, the facts demonstrate that the March and April 2017 grievances were appeals of the IRSs Mr. Perfetto filed between November 2016 and January 6, 2017 concerning his mental health medication and treatment.

10

mental health needs were being met at NCF at that time.  Commissioner Kench did not deny the grievance as untimely or for any other procedural defect.

"When prison officials decline to enforce their own procedural rules, a prisoner's failure to comply with those rules does not create a procedural bar to that prisoner's subsequent federal lawsuit."  Walker v. Washington, No. 23-2104, 2025 U.S. App. LEXIS 8909, at *9, 2025 WL 1145719, at *3 (6th Cir. Apr. 15, 2025) (citing Reed-Bey v. Pramstaller, 603 F.3d 322, 326 (6th Cir. 2010)); see also Beinlick v. Pace, No. 23-2479, 2025 U.S. App. LEXIS 2688, at *3, 2025 WL 416811, at *1 (9th Cir. Feb. 6, 2025) ("PLRA exhaustion requirement is satisfied if prison officials decide a potentially procedurally flawed grievance on the merits").   "'[A] prison waives its procedural objections to considering the merits of a grievance, and therefore waives its exhaustion defense, if it does not explicitly rely on the grievance's procedural shortcomings as an adequate and independent ground for denying the grievance at the administrative level.'"  Varner v. Shepard, 11 F.4th 1252, 1261 (11th Cir. 2021) (quoting Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018) (emphasis in original) (because the corrections commissioner denied plaintiff's grievance on the merits at the final level of administrative review, he waived any procedural defect)).

The undisputed facts in the summary judgment record demonstrate that the defendant waived a PLRA exhaustion defense based on Mr. Perfetto's untimely filing of his Level I grievance to Director Mattis or his Level II grievance to Commissioner Kench. Neither Director Mattis nor Commissioner Kench denied Mr. Perfetto relief on the basis that his grievances were untimely filed, and Commissioner Kench denied Mr. Perfetto's

11

grievance on the merits.  Accordingly, the court finds that Mr. Perfetto has sufficiently exhausted the sole claim in this action to satisfy the PLRA exhaustion requirement.  The district judge, therefore, should deny Dr. Graves's motion for summary judgment (Doc. No. 64).

## Conclusion

For the foregoing reasons, the district judge should deny Dr. Graves's motion for summary judgment (Doc. No. 64).  Any objections to this R&R must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Only those issues raised in the objection to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Natl Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).  Any issues not preserved by such objection(s) are precluded on appeal.  See id.  Failure to file any objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

March 5, 2026

cc:    Jonathan Perfetto, pro se
       Pamela L.P. Eaton, Esq.
       Megan Alydia Sigur, Esq.
       Catherine Denny, Esq.

12